Roberts *vs.* Taylor, et al.

ROBERTS *vs* TAYLOR, et al.

1. The endorsement of a note or bond, is a contract within the meaning of the statute against gaming, and

2. Being within the statute, is void as between the original parties.

3. What might be the the legal consequence of the endorsement of a note in such case, in respect to an innocent holder, without notice—*Quere.*

4. It may well admit of doubt, whether, independent of all statutory regulations, money won at play may not be recovered back;

5. And in all cases of contracts arising out of gaming, between the original parties, the courts will interfere, where the money has not been actually paid.

Error to the Circuit court of Dallas county, exercising chancery jurisdiction.

Bill for injunction and relief. The bill stated, that Rives and Vaughn made to complainant a promissory note for one thousand dollars, for a valuable consideration, payable twelve months after date, and that afterwards, while on a visit to Montgomery, complainant fell in company with Taylor and Blevins, who invited complainant to play at cards—prevailed upon him to indulge with too great freedom in inebriating liquors, which impaired the soundness of his judgment, and while complainant was in this situation, said Taylor won from him the note which complainant endorsed to Taylor,

who brought suit on it in the Circuit court against the makers. Vaughn, one of the makers, was to have defended the suit under a contract with complainant to indemnify said Vaughn in the costs, but omitted to do so, to favor the interest of Taylor. Judgment was obtained on the note by Taylor, against Vaughn.

Prayer for subpoenas to answer, and for an injunction to restrain Taylor and his attorney, and all other persons, from proceeding further to collect the amount of said judgment; and that Vaughn be enjoined from paying any person but complainant the sum of money called for by the note, and for other relief. An injunction to that effect was obtained.

The answer of Taylor stated, that at the time spoken of in the bill of complaint, he, respondent, was dealing a game called Faro for another person, and won of complainant seventy or eighty dollars, which was all the money complainant had. Respondent then desired complainant to cease playing, who refused and insisted upon betting the note mentioned in the bill of complaint. One Blevins then staked a note for one thousand dollars, against the note held by complainant. Respondent avered that the game was played fairly—that complainant was not intoxicated, and that there was no liquor drank in the room. Complainant wanted to bet other notes, and continue playing, but respondent refused to play further, and when respondent advised complainant to desist from further playing, complainant answered that he understood his own business best. Respondent won complainant's horse also, but restored it to him. Complainant endorsed the note to respondent, without a request

Roberts vs. Taylor, et al.

to that effect by respondent. The answer denied all fraud, artifice, combination, &c.

The answer of Blevins stated, that the note was won by one Taylor, at a game called faro, at Montgomery. Complainant seemed to be sober, and the game was played fairly. There was no liquor in the room, and complainant was not solicited to drink by any person. Complainant proposed playing for the note without solicitation from any quarter, and after having lost the note mentioned in the bill of complaint, endorsed it to Taylor. The answer denied all fraud, artifice, trick, combination, &c. Respondent also demurred to the bill.

Upon the coming in of the answers, the injunction was dissolved, and the bill dismissed. The chancellor, in his decree, was clearly of opinion that chancery had jurisdiction under the statute, and proceeded to dispose of the case.

It appeared from the facts, that Roberts fairly lost the note, at a game called *faro*, and endorsed and delivered it to Taylor. At common law, a wager fairly won might be recovered in a court of law, but equity never interfered, independent of the local statutes. In the case of Rawden vs Shadwell, money was decreed to be paid back to the losing parties, which had been previously paid on a bond given to secure the payment of money won at backgammon, but that decree went exclusively on the ground, that the money was paid on a bond which was declared void by statute. It was doubtful whether equity would, at this day, interfere in a case between gamblers, to a further extent than the jurisdiction given by statute, and where money has been paid

on a note or bond given to secure the payment of money won at play, it was very doubtful whether equity would help the party to recover it back.

In this case, the game was fairly played, and the note fairly won, and the chancellor could make no distinction between a note and money or other property, where the original consideration was not in question, though he did not admit that *unfairness* was a good ground for the interposition of the court. The rule *in pari delicto melior est conditio possidentis* applied in this case, and he was bound to leave the parties where, by their unlawful proceedings, they had placed themselves. To this effect, the chancellor cited the case of Lee's adm'r vs Ware— Hill's So. Ca. Reports.

The plaintiff in error assigned, that

The court below erred in dissolving the injunction, and dismissing the bill of complaint.

*Peck & Clark*, for plaintiff in error.
*J. B. Clarke*, contra.

ORMOND, J.—If this bill can be sustained, it must be on the ground, that the endorsement of a note or bond is a contract, within the meaning of the statute, against gaming.

The language of the act is, that "All promises, agreements, notes, bills, bonds, or other securities or other conveyances whatever, made, signed, given, granted, drawn or entered, or executed by any person or persons whatsoever, after the passing of this act, where the whole or any part of the consideration of such promise, shall be

Roberts *vs.* Taylor, et al.

for money or other valuable thing laid or betted at cards, &c. shall be utterly void, and of no effect, &c.

That an endorsement of a note or bond is a contract or agreement, entered into by the parties to such endorsement, is a question too clear to admit of doubt, or to require authority to support, and, by necessary consequence, included in the terms of the act above referred to. Being within the act, it is clearly void, as between the original parties to the transaction ; whatever might be the legal consequence of such an endorsement, in the hands of a *bona fide* holder, without notice of the consideration of the original transfer.

This court, in the case of Tindall vs Childress & May, (2 Stewart & Porter,) intimated an opinion, that the case of a transfer or assignment of a note, was not embraced by the statute against gaming ; but that question did not necessarily arise in that case, as the plaintiff there was an innocent holder—and the court, after considering the question, say :  " But it is unnecessary to discuss this question, or to collate authorities upon it, as the complainant, from the evidence before us, occupies the place of an innocent holder."    The parties before us, are the parties to the original gaming transaction, and, it seems to us, that not only on principle, but also to carry into effect the manifest object of the legislature, we must declare this assignment such an agreement as is declared void by the legislature.

If, then, the assignment be void, the defendants in error can acquire no title thereby in the note, and the property in it still remains in the complainant.

It is, however, insisted by the defendants counsel, that

a court of chancery cannot interfere, after a judgment at law, where the defence was legal, and might have been made on the trial at law. The principle, as stated, is undoubtedly correct, and has been frequently sanctioned by this court; but we do not think it applies to this case. Without determining what was the intention of the legislature in the enactment, that " The courts of equity shall have jurisdiction in all cases of gambling consideration, so far as to sustain a bill of discovery, or to enjoin judgments at law," it is sufficient, in this case, that the plaintiff in error is not concluded, by the omission of Vaughn, the maker of the note, to make a defence at law ; nor was Vaughn under any obligation to do so.

It is, then, the naked case of one, without any consideration, obtaining the title to a note, instituting proceedings thereon in his own name, and obtaining judgment. He can be considered in no other light than that of a trustee for the true owner; and the proceeding by bill in equity, enjoining Vaughn from paying over the money, was strictly correct.

It is said that the parties are in *pari delicto,* and that the court should not interfere between them. We cannot think so. Between the professional gambler, and his deluded victims, there is a great inequality of guilt ; but we do not decide on that principle solely. We hold that in all cases, as between the *original parties,* the courts will interfere, when the money has not actually been paid ; and it may well admit of doubt, on principle, though the weight of authority is against it, whether, independent of all statutory regulation, even money won at play may not be recovered back.

Roberts *vs.* Taylor, et al.

That eminent jurist, Judge Story, in his Commentaries on Equity, says: "But it is difficult to perceive why, on principle, the money should not be recovered back, independent of any statutable provision; since it is in furtherance of a great public policy; and it is very certain that if money is paid on a gaming security, it may be recovered back,—for the security is utterly void. Is not the or inal gaming contract equally void, and therefore equally within the rule and the policy on which it is founded."—(See 2 Story's Equity, and cases there referred to—303.)

But no final decree can be entered in this court, as Vaughn has never answered; nor have any proceedings been had against him.

The decree of the court below must therefore be reversed, and the cause remanded for further proceedings, in conformity with this opinion.