# Miller *v.* The State.

### *Indictment for Burglary.*

1. *Burglary in breaking and entering corn-crib ; proof of value of corn, and charge as to.*—That the use of corn as food for horses and mules constitutes value, is a fact which all men are presumed to know ; and the court may charge the jury, that they may conclude the corn was valuable, if the proof shows that it was used to feed horses or mules ; and circumstantial proof being sufficient, if strong and convincing to the satisfaction of the jury, may refuse to instruct them that the fact that the corn had value must " be positively proved by the evidence."

2. *Same ; breaking and entering, as element of offense.*—The corn having been abstracted from the crib by the defendant, by thrusting his arm through an opening between the chinks, if he made or enlarged the opening for the purpose, this would constitute a sufficient breaking as an element of burglary ; but, if the opening was neither made nor enlarged by him, though he thrust in his arm and took out the corn, and might thereby be guilty of larceny, he would not be guilty of burglary.

3. *Sentence to hard labor for costs ; correction of clerical error.*—A sentence to hard labor for non-payment of costs, in a criminal prosecution for a misdemeanor, can not exceed eight months, nor fifteen months in a case of felony (Sess. Acts 1880-81, p. 67) ; but a sentence beyond this limit, being a clerical error, will be corrected by this court, if the record contains no other error.

FROM the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The indictment in this case charged that the defendant, George Miller, with intent to steal, broke into and entered a corn-crib of John Fanning, a building specially constructed to hold or keep corn, and in which corn, a thing of value, was at the time kept for use. The defendant pleaded not guilty, and was tried on issue joined on that plea ; and being convicted, he was sentenced by the court to hard labor for the county for one year, and to an additional term of 469 days for the non-payment of the costs, which were taxed at $140.50. On the trial, as appears from the bill of exceptions, the prosecution proved by one Davis, who was a tenant of John Fanning, that when he went to the stable on Tuesday morning, June 27th, 1876, about day-light, " it being light enough for him to see something white under the trough in which his horses were eating," he shoved his foot under the trough, and found it was the defendant, who had a sack on the ground containing about a half-bushel of corn ; that he thereupon arrested the defendant, carried him to his house, and kept him there for several hours, until the arrival of a constable for whom he had sent.

[Miller v. The State.]

As to the character of the building, the ownership of the property, &c., this witness further testified : "There was a shed around the crib with a door to it, and witness used the shed as a stable for his mule. He rented the land from Mr. Fanning where the crib and stable were. He used the stable while Mr. Fanning used the crib to keep corn in. There was about forty or fifty bushels of corn in the crib at the time. Mr. Fanning kept the key of the crib, and furnished and fed the mules, and they farmed on equal shares. Whenever witness wanted corn for his mules, he would tell Mr. Fanning, who would put corn enough in the little crib (which was near this big one) to feed his mules for several days. The crib was chinked around. Witness noticed, on the morning he caught defendant in his stable, that some of the chinks had been taken out of the crib above the horse-trough, and some of the back had been knocked off the log. The chinks were about two or three inches thick, and a foot or more in length. Witness had never noticed any holes in the crib, or chinks taken out, before that morning; and the chinks were not taken out the evening before, when he went in and fed his mules. The hole was large enough for him to put his hand in." The witness testified, also, that corn was then selling in the neighborhood at forty cents per bushel. Said Fanning, the owner of the crib, also testified substantially to the same facts as to the ownership of the property, the contents of the crib, and the contract between him and Davis as to the cultivation of the land; and he further testified to confessions voluntarily made to him by the defendant, on the morning of his arrest, when brought into his presence by the constable. The defendant introduced evidence tending to show that, at and about the time of the commission of the alleged offense, he had been selling meal for said Davis, and taking corn in payment; that Davis owed him four bushels a few days before, and delivered a sack in payment, telling him to send or come for the balance if the sack did not contain that quantity; that the sack contained in fact only about three bushels, and he sent word to that effect to Davis; and that he left home on said Tuesday morning, after day-light, with the avowed purpose of going for the bushel of corn which Davis owed him. These facts were proved by the testimony of the defendant's own children, whom he introduced as witnesses, and in the statement which he himself made to the jury; and he further stated, "that the said Davis took the ears of corn from the crib, through a crack between the logs, and put them in the sack while defendant held it open."

The bill of exceptions purports to set out all the evidence, and the above is the substance of it. Thereupon, the court charged the jury as follows : "That an article has value,

may be proved by the uses to which it is put; and if the proof shows to the jury, beyond a reasonable doubt, that said corn was used to feed horses or mules, they must conclude that the corn was valuable." The defendant excepted to this charge, and then requested the following charges, which were in writing, and each of which was refused by the court: (1.) " The ownership of the building alleged to have been broken into and entered must, under this indictment, be proved beyond a reasonable doubt to be in John Fanning; and if the jury should find, from the evidence, that the ownership of said building was in said Fanning and said Davis jointly, their verdict is bound to be in favor of the defendant." (2.) " If the jury believe, from the evidence, that the building of which the crib was a part, from which the corn is alleged to have been stolen by the defendant, was in the joint use of said Fanning and said Davis, and was used by them for their mutual convenience, then they must find the defendant not guilty." (3.) "The jury can not take it for granted that the corn was of value, unless it is positively proved by the evidence." (4.) " If the jury are in doubt, as to whether any evidence has been introduced touching the value or worthlessness of the corn alleged to have been kept in the crib, which the defendant is charged to have broken into and entered, they must not consider any fact of which they doubt whether such evidence has or has not been given." (5.) "If the jury find, from the evidence, that the entrance to the corn-crib, through which the corn was taken, was effected through an opening previously made there by Davis, and not by the defendant, this is not a burglarious entrance by the defendant, and the jury must acquit him." To the refusal of these several charges the defendant duly excepted.

W. L. CLAY, and GEO. S. GORDON, for appellant.

T. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—There was certainly testimony in this case that the corn had value. Use as food for horses and mules, constitutes value, as all men must be presumed to know. But there was evidence that corn, in that neighborhood, was worth fifty cents a bushel, and that there were in the crib from one hundred and fifty to two hundred bushels of corn. If this testimony was believed, there was ample evidence of value. The Circuit Court did not err in the affirmative charge given, nor in refusing to give charges three and four asked by the defendant. There being proof that corn had value, there is no rule of law that that fact, any more than any other, shall be "positively proved by the evidence." Circumstantial evidence is sufficient,

[Miller v. The State.]

if strong and convincing enough.    Charge four was rightly re-
fused, because it is both  abstract and involved.    So,  charges
one and two are abstract, for there is no  testimony that Davis
had any ownership or use in the crib.    They were rightly re-
fused on that account, if for no other.—*M. & E. Railway Co.
v. Kolb*, 73 Ala. 396 ; 1 Brick. Dig. 338, § 41.

2.    The testimony of the witness Davis tended to show,
that the defendant removed the filling or obstruction which had
been placed in the chinks of the crib, and  thereby effected an
opening, through which he thrust his arm, and by  that means
abstracted the corn he is charged with intending to steal.    This,
if true, would be a sufficient  breaking, to constitute that ele-
ment of the crime of burglary.    The defendant  testified, that
he did not remove the obstruction, but that it had been  previ-
ously removed, and the opening was there when he went there.
He also testified, that Davis himself took the corn out of the
crib.    Now, if the defendant removed nothing, and neither ef-
fected nor enlarged the opening through  which the corn was
taken out, then he was not guilty of burglary,  even though he
thrust his arm in, and took out the corn.    His act, in such
event, might be larceny.    The fifth charge, asked by defend-
ant, raises this question.    It claimed an acquittal, on the hy-
pothesis of defendant's statement of the  facts in the case.    On
that hypothesis, he would not be guilty of burglary ; for, to
constitute that crime, there must be both a  breaking and en-
tering, as well as the intent to steal, or to commit a felony.—3
Green. Ev. §§ 88, 76, *et seq.*; 2 Russ. on Crimes, 9th Ed., 2 ;
*Pines v. State*, 50 Ala. 153; *Brown v. State*, 55 Ala. 123 ;
*Walker v. State*, 63 Ala. 49.

3.    There is an error in the judgment for costs.    The sen-
tence to hard labor for the non-payment of  costs, can not now
exceed eight months in cases of misdemeanor, and fifteen
months in cases of felony.    The sentence in this case exceeds
fifteen months.—Sess. Acts, 1880-81, 37.    This error being
clerical, if the only one in the record, would have been here
corrected.

Reversed and remanded.